# SUSANNAH R. MARTIN

## *vs.*

## JOHN G. ERDMAN, GEORGE H. ERDMAN AND LIZZIE ERDMAN, His Wife.

### *Wills: construction.*

A will construed as to the amount of land and different tracts referred to and comprised within the terms of its various provisions.          pp. 668-672

*Decided January 13th, 1915.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The case was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*August W. Schnepfe,* for the appellant.

*John B. Gontrum* and *Samuel Regester* (with whom was *John S. Biddison* on the brief), for the appellees.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment for the defendant in an ejectment suit. The plaintiff, as well as the defendant, claims title from their father, Adam G. Erdman.

One Peter Erdman by his last will and testament, probated the 6th day of May, 1833, in the Orphans' Court of Baltimore City, devised unto his two sons, Mathias and the said Adam Gottlieb Erdman, two adjoining lots of land situated on the Belair Road, in Baltimore County, Maryland, one lot containing eleven acres and two roods, and the other three and one quarter acres, as stated in the will.

Adam G. Erdman thereafter acquired by deed from Jane Dew and others, dated October 7, 1841, a lot of land, containing twelve acres and thirty-six square perches, adjoining on the east the said lands devised as aforesaid to him and his brother Mathias.    On the twenty-third day of June, 1853, his brother Mathias conveyed to him his undivided one-half interest in said lands devised as aforesaid to them by their father, and subsequently, on the 7th day of June, 1870, Adam G. Erdman acquired another lot of land adjoining on the west the lands so devised to him and his brother, containing six acres three roods and twenty-seven perches of land.

It was upon the lands so acquired by him that Adam G. Erdman resided.    The dwelling-house was upon the lands devised as aforesaid to him and his brother.    Just when Adam G. Erdman first made his home there is not disclosed by the evidence.    The plaintiff in her testimony says that she was born in 1846 and she lived with her father until 1865, and that as long as she could remember he had lived at such place. Another daughter, Mary Elizabeth Jenkins, who was born in 1837, testified that she, too, lived with her father until she was married, and that she frequently visited him up to the time of his death, and that he had lived upon this land as long as she could remember, and that he had worked all this property, consisting of the various lots mentioned above, as one, without any division fence between any of them.    Another daughter, Louisa Christopher, testified that she never knew her father to live anywhere else, except when he was rebuilding his dwelling that was burned in 1848.    It is most probable that his residence there commenced very shortly after the death of his father in 1833, and that he was residing at that place at the time of the conveyance of the lands by Jane Dew in 1841.

Adam G. Erdman had other children and owned other lands, situated on the Harford Road, Philadelphia Turnpike and elsewhere, as disclosed by his will, but these do not concern us in deciding this appeal.

By his will, dated the 10th day of May, 1876, and probated November, 1878, he devised all of his estate, real and personal, to his wife, for and during her natural life, and upon her death it. went to his different children as therein devised. In item second we find the following devise to the defendant, John G. Erdman:

"I give, devise and bequeath unto my son, John G. Erdman, his heirs and assigns, my Home Place, situated on the southeast side of the Belair Road, including a lot purchased by me from William Claggett's estate and adjoining the Home Place, with all the improvements thereon, and containing in all about twenty-five acres of land, more or less; provided, however, that my said son, John G. Erdman, pay to my estate within twelve months after the death of my wife the sum of five thousand dollars."

In the fifth item is found the following devise to his daughter, the plaintiff:

"I give, devise and bequeath to my daughter, Susannah R. Martin, her heirs and assigns, my lot of ground with all the improvements thereon, being a two-story and attic frame dwelling, etc., situated on the southeast side of the Belair Road, fronting three hundred and forty feet on said road to a stone and running back about nine hundred feet to a county lane, and fronting on said lane three hundred feet, and was purchased by me from the widow Dew and others, and the sum of one thousand dollars in cash."

The decision of this case depends entirely upon the construction to be given to the sections of the will that we have quoted. In construing this will these items must be considered together and in connection with other parts of the will, if any, that may reflect upon the intention of the testator.

Each of the above named lots acquired by the testator front on Belair Road, but the Dew lands materially widen as they extend back from such road in the rear of one of the orig-

inal lots devised to the testator and his brother by their father and upon which the dwelling house was located. The Dew lot extended in the direction of said dwelling house to within a short distance in the rear of the house, and the acquisition of such Dew lands by the testator was important to him in shaping up his lands.

The testator became the owner of an undivided half interest in the lands devised to him and brother so early as 1833, and became the entire owner of said lands so early as 1853. In the meantime, in 1841, he acquired the Dew lands. These different lots of land so acquired by the testator at different times were used and treated by him after their acquisition as one body or tract of land, and it was upon these lands so consolidated that he made his home for many years, as established by the testimony of the plaintiff, the only testimony that was offered. It was not until 1870 that he acquired the Claggett lands, a few years before his will was made in 1876, and for this reason we can account for the expression as to them found in the devise to John G. Erdman. The lands so devised are described as "my Home Place situated on the southeast side of Belair Road, *including the lot purchased by me from William Claggett's estate and adjoining the Home Place,* with all the improvements thereon, and containing in all about twenty-five acres of land, more or less."

The aggregate number of acres in all the lots named, including the whole of the Dew lot, is about thirty-three acres, eight acres in excess of the number named by the testator in the devise to his son. This discrepancy, however, is fully explained, we think, when we consider the devise to the plaintiff, for, as we have said, the language there used must be considered in connection with that employed in the devise to the defendant.

The testator in his devise to John G. Erdman, it is true, excepts no part of the Home Place, and without the devise to the daughter the whole of it might have passed, notwithstanding the discrepancy in the number of acres given. As

to whether it would or would not, however, it is not neces-
sary for us in this case to determine.

The lands devised to the daughter, containing over six
acres, are well defined and form part of the Dew lands, and
consequently a part of the Home Place of the testator. But,
the plaintiff contends that she is not confined within the metes
and founds of the land as devised, but entitled to all of the
Dew lands, and it is · to eject the defendant from the
remainder of the Dew lands that this suit is instituted.

It is upon the expression found at the conclusion of the
description—"and was purchased by me from the widow
Dew and others"—that she bases this contention. The mean-
ing of this expression, we think, is too plain to make it
necessary for us to discuss it, more than to say that the
lands devised were of the lands purchased by the testator
from the widow Dew and others, but in no sense embraced
all of such lands.

The lands so devised to the plaintiff, forming part of the
Home Farm and being taken therefrom, reduces the number
of acres devised to the son to about twenty-seven acres, and
when we consider·that this was a mere estimate, for we may
gather from the evidence that there had been at such time
no survey of the lands devised to the daughter, this was cer-
tainly sufficiently accurate in stating the quantity of land
that he devised to his son. It is clear to us that under the
devise to the son the balance of the Dew lands not embraced
within the description given by metes and bounds in the
devise to the daughter, passed to the son as a part of the
Home Place of the testator.

At the conclusion of the plaintiff's testimony the Court
granted two prayers taking the case from the jury for the
want of legally sufficient evidence offered by the plaintiff
entitling her to recover. This ruling, we think, was correct,
and we will affirm the judgment below.

*Judgment affirmed, with costs to the appellees.*